IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> $45,0000 IN U.S. CURRENCY, ) <br> MORE OR LESS, ) <br> ) <br> Defendant. ) <br> ) | Civil No. 4:23-cv-00114 <br><br> VERIFIED COMPLAINT FOR <br> FORFEITURE *IN REM* |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property ("Defendant property") to the use and benefit of the United States of America ("Plaintiff") for its involvement, as set forth below, in violations of 21 U.S.C. § 846 (Attempt and conspiracy) § 841(a)(1) (Prohibited acts), and § 843(b) (Prohibited acts C).

2. The United States believes the Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and as proceeds traceable to such an exchange, and as money used or intended to be used to facilitate any violation of said subchapter.

3. It is believed that evidence will show or will after a reasonable opportunity for further investigation and discovery, that the Defendant property constitutes the proceeds of a prohibited controlled substance offense or was used or intended to be used to facilitate a prohibited controlled substance offense.

## II.   DEFENDANT *IN REM*

4. The Defendant property is generally described as approximately $45,000 in U.S. currency seized on or about October 21, 2022, from the Douglas County Clerk of Court, as discussed more fully below. The Defendant property is in the custody of the United States.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction over this case, pursuant to 28 U.S.C. Section 1345 (United States as plaintiff), as an action commenced by the United States of America, and pursuant to 28 U.S.C. Section 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

6. This Court has *in rem* jurisdiction and venue over the Defendant property under 28 U.S.C. Sections 1355(b) and 1395(b) as the acts or omissions giving rise to the forfeiture occurred in this district.

## IV. FACTS

7. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

8. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

9. Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision. 21 U.S.C. § 812(b)(1)(A)-(C).

10. Schedule II substances have a high potential for abuse, the controlled substances have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions but use of a Schedule II controlled substance may lead to severe psychological or physical dependence. 21 U.S.C. § 812(b)(2)(A)-(C).

11. Only persons registered by the Attorney General of the United States, in accordance with rules and regulations promulgated by the Attorney General, may legally manufacture or distribute controlled substances. 21 U.S.C. § 822(a), (b).

12. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute, a controlled substance, unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

13. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

14. Fentanyl is a controlled substance under the Controlled Substances Act.

15. Fentanyl is a Schedule II controlled substance.

16. Under the Controlled Substances Act, all moneys or things of value furnished or intended to be furnished by any person in an illegal exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a violation of Subchapter I of the Controlled Substances Act, are subject to forfeiture to the United States and no property right shall exist in such property.

17. It is a violation of federal law for a person to distribute, dispense, or possess a controlled substance, unless authorized by law to do so.

18. Ja'Cara Baker is not authorized by law to dispense, distribute, or possess controlled substances, specifically fentanyl.

19. Beginning by at least December 2021, Kyrell Wells, Ja'Cara Baker, Jamier Arman, Christian Arman, and others known and unknown conspired in the Southern District of Iowa and elsewhere to illegally distribute fentanyl, in violation of federal law.

20. The conspiracy obtained the fentanyl it illegally distributed from other states, including, but not necessarily limited to, Arizona and Washington.

21. It was an objective of the conspiracy to sell the fentanyl at a profit to one or more members of the conspiracy.

22. Drug traffickers typically require payment in, and keep their profits in, cash, in order to try and prevent their illegal activities from being detected by financial institutions and law enforcement.

23. Drug traffickers often store the profits or proceeds they derive from drug dealing in what they believe to be a safe location, such as their residence or the residence of a person they trust, or even a remote location, such as a storage unit, safe, safety deposit box, or "stash house." and often share knowledge of where the profits and proceeds are stored with people they trust and who might help them access the money, if needed, including, but not limited to, a close friend, significant other, or family member.

24. Ja'Cara Baker (hereinafter "Baker"), by at least March 2022, distributed large amounts of fentanyl pills to others in the Southern District of Iowa and elsewhere, by herself and while conspiring with others.

25. It is estimated that during part of the conspiracy Baker and her son, Kyrell Wells (also known as "Little Joe"), her primary partner in the conspiracy, were receiving approximately 10,000 fentanyl pills every four (4) to five (5) days.

26. Baker and her son also competed for customers, as well.

27. It is believed that, at times, Baker was illegally selling or distributing 2,000 to 3,000 fentanyl pills per week and sold one customer approximately 5,000 fentanyl pills in a 48hour period.

28. Baker charged customers between $3 and $15 per pill.

29 Baker is conservatively believed to have sold at least 29,000 fentanyl pills as part of the conspiracy.

30. At $3 per pill, Baker would have made $87,000 from the sale of fentanyl.

31. At $15 per pill, Baker would have made $435,000 from the sale of fentanyl.

32. In August 2022, law enforcement seized 250 fentanyl pills and $1,000 from Baker's residence.

33. Other people involved in the illegal distribution of fentanyl in the Omaha-Council Bluffs metropolitan area during the relevant time period knew Baker as "Seven."

34. On September 13th, 2022, Baker was arrested by the Omaha Police Department for an outstanding felony warrant. The warrant was for the distribution of a controlled substance.

35. On the Nebraska charges, Baker was booked in at the Douglas County Jail from September 13, 2022, to September 15, 2022.

36. Baker's bond to be released from Douglas County Jail was $50,000.

37. On September 15th, 2022, at 14:05 Baker called her daughter, "TB" on a telephone. Law enforcement listened to the call, and pertinent parts are as follows:

    a. Baker told "TB" to place a three-way call to "best friend" who "TB" identified as "Hollie."

    b. Several seconds later, another female got on the line with "TB" and Baker.

    c. Baker instructed Hollie and "TB" to coordinate with Baker's attorney to get her bond money.

    d. Baker directed "TB" and Hollie to get the money from an unknown location to give to her attorney.

    e. "TB" was the only one who knew where the money was located.

    f. Hollie asked Baker if she wanted "TB" to take the whole thing. Baker said no, she only wanted "TB" to take the one bag, the one bag with the larger bills. Baker said there were three to four bags, but she needed to open the one with the larger bills. Baker told "TB" that she should already have 100 making 10 thousand and to count out 400 more out of the larger bag. Once that was done, call her attorney and give it all to him.

    g. Baker said "TB" already had ten thousand dollars and Baker directed her to pick up an additional forty thousand dollars in cash to give to her attorney.

38. On September 15th, 2022, at 16:15 Baker called her daughter "TB" at \*\*\*-\*\*\*-7141. "TB" took the money and met with Baker's lawyer. Baker asked "TB" if she got a receipt. "TB" stated she did not and that it was better that way. "TB" went to the lawyer's office with Hollie and did it there.

39. It is typical for most people to store their income and money in financial institutions.

40. The fact Baker kept at least $50,000 in U.S. Currency not in a financial institution but organized into and stored in bags is evidence the money is the proceeds of illegal drug dealing.

41. On September 15, 2022, Baker's attorney, acting on her behalf, paid the County Court of Douglas County, Omaha, Nebraska, $50,000 in U.S. Currency as an appearance bond in case number K1188508, documented by a receipt numbered 80412.

42. A search of an online database could not find any recent wage-earning information for Baker.

On September 28, 2022, Baker was indicted in this district in *United States v. Arman, et. al.*, Crim. No. 1:22-cr-00047, and charged with conspiracy to distribute a controlled substance, namely fentanyl, in the Southern District of Iowa and elsewhere. The Grand Jury made a probable cause finding that the $50,000 at issue here was subject to criminal forfeiture.

43. Defendant Ja'Cara Baker was ordered detained.

44. The United States obtained a federal civil forfeiture seizure warrant for the $50,000, and it was executed on October 31, 2022.

45. After deducting $5,000 for administrative fees as apparently required under applicable state law in Nebraska, Douglas County turned $45,000 of the funds over to the federal government.

46. The federal government initiated an attempted administrative forfeiture of the $45,000.

47. On or about January 11, 2023, Baker, while still in federal custody on drug charges, contested the administrative forfeiture.

48. Baker, under penalty of perjury, claimed the seized money "was from several legitimate sources, including inheritance, settlement from a civil case and casino winnings."

49. As part of her claim, Baker submitted an "inventory, Affidavit of Due Diligence, and Certificate of Mailing" dated September 20, 2019, from Douglas County, Nebraska County Court. The affidavit stated the funds described therein

were owned by Trillionaire Baker, Baker's daughter, a "ward/incapacitated person/protected person," and not by Baker herself.

50. Trillionaire Baker was born in 2002, and became an adult in early 2020, no longer requiring a guardian. As part of her claim, Baker submitted an Affidavit from October 4, 2019, purportedly documenting a settlement payment of $12,000 to the Estate of Janice Baker, not to Baker herself.

51. As part of her claim, Baker submitted an Order Granting Special Administrator Authority to Settle Claims and Distribute Settlement Proceeds dated September 30, 2019, which specified only $8,279.58 was to be paid to the estate.

52. The story in Baker's claim and the documentation she provided are consistent with the type of false cover story often told by drug traffickers in an effort to convince law enforcement that seized drug money is, in fact, legitimately earned, untainted money.

53. The evidence in this case tends to prove the Defendant property is drug money.

54. Defendant Baker is currently scheduled to go to trial on May 8, 2023.

### V. COUNT ONE
### (FORFEITURE UNDER 21 U.S.C. § 881(a)(6))

55. Plaintiff repeats and realleges each and every allegation set forth above.

56. The United States has reason to believe the Defendant property constitutes moneys or other things of value furnished or intended to be furnished in exchange for a controlled substance, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, § 843, and § 846 et seq.

57. As a result of the foregoing, the Defendant property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(6).

## VI. CONCLUSION

WHEREFORE, the Plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant property, that notice of this action be given to all persons known or thought to have an interest in or right against the property, that the Defendant property be forfeited to the United States, and that it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/ Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex,
Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Jordan Filippi, hereby verify and declare under penalty of perjury that I am a Special Agent with Federal Bureau of Investigation and that I have read the foregoing Verified Complaint *in Rem, United States v. $45,000 in U.S. Currency, more or less* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as an FBI Special Agent.

Dated: April 6, 2023.

Jordan Filippi, Special Agent
Federal Bureau of Investigation